

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| U. S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW J. MARCUS, TECH POWER INC., JOHN D. BRINER, and METROWEST LAW CORP.,<br><br>Defendants. | Civil Action No: 15-cv-03307<br><br>Judge Milton I. Shadur |

### [PROPOSED] ORDER FOR FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANTS JOHN D. BRINER AND METROWEST LAW CORP.

On April 14, 2015, Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), filed a Complaint against Defendants Matthew J. Marcus ("Marcus"), Tech Power Inc. ("Tech Power"), John D. Briner ("Briner") and MetroWest Law Corp. ("MetroWest") (collectively "Defendants") for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2012), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1-190.10 (2015). (Doc. 1). In particular, the Commission's Complaint alleged that from January 28, 2014 through February 5, 2014 ("relevant period") Defendants engaged in 624 round-turn trades involving 1,248 perfectly matched, pre-arranged, non-competitive transactions in single stock futures ("SSF") contracts listed on OneChicago LLC ("OneChicago") to illegally move at least $390,000 from MetroWest to Tech Power. The

Commission's Complaint further alleges that by structuring the transactions such that Tech Power would buy at lower prices and sell at higher prices opposite MetroWest, Defendants were able to ensure Tech Power would always profit from the transactions, enabling the Defendants to conduct a "money pass" between the two accounts. By virtue of this conduct, the Complaint alleged that Defendants violated Section 4c(a)(2)(A)(ii) of the Act, 7 U.S.C. § 6c(a)(2)(A)(ii) (2012), by entering into transactions that are fictitious sales involving the purchase or sale of commodities for future delivery and Regulation 1.38(a), 17.C.F.R. § 1.38(a)(2015), by entering into illegal, non-competitive transactions to buy and sell futures contracts.

On April 16, 2015, this Court entered an *Ex Parte* Statutory Restraining Order and Asset Freeze against all Defendants and thereafter, extended the *Ex Parte* Statutory Restraining Order to May 12, 2015. (Docs. 15, 21).

Service was properly effected upon Briner, a Canadian citizen, on April 22, 2015, pursuant to Fed. R. Civ. P. 4(e)(2)(C), by delivering a copy of the summons, complaint, and related pleadings to Mr. Martin Ward, a compliance officer at Interactive Brokers LLC, who is authorized by law to receive service of process for Briner, under Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), and Commission Regulation 15.05, 17 C.F.R. § 15.05 (2015). (Docs. 16). Service also was effected on Briner on April 22, 2015, pursuant to Fed. R. Civ. P. 4(f)(2)(C)(i), by delivering a copy of the summons, complaint and related pleadings to Briner personally at his residence in Abbotsford, British Columbia, Canada. (Doc. 19).

Similarly, service was properly effected upon MetroWest, a British Columbia law firm, on April 22, 2015, pursuant to Fed. R. Civ. P. 4(h)(1)(B), by delivering a copy of the summons, complaint, and related pleadings to Mr. Martin Ward, a compliance officer at Interactive Brokers LLC, who is authorized by law to receive service of process for MetroWest, under Section 6c(e)

2

of the Act, 7 U.S.C. § 13a-1(e), and Commission Regulation 15.05, 17 C.F.R. § 15.05 (2015). (Docs. 17). Service also was effected on MetroWest pursuant to Fed. R. Civ. P. 4(h)(2) and to Fed. R. Civ. P. 4(f)(2)(A), by serving its principal and 100 per cent owner, Briner, on April 22, 2015. (Doc. 18).[1]

On May 7, 2015, this Court entered a Consent Order for Preliminary Injunction and continued the asset freeze, against Defendants Marcus, Tech Power and Briner. (Docs. 26, 27, 28). On the same day, this Court entered an Order for Preliminary Injunction and Other Ancillary Relief and continued the asset freeze, against Defendant MetroWest. (Doc. 29).

On June 10, 2015, this Court entered an order striking Answers filed by Briner and MetroWest (Doc. 37). On July 7, 2015, the CFTC filed a Renewed Motion for Entry of a Default against Briner and MetroWest (Doc. 40), which was granted on July 9, 2015 (Doc. 43). Briner and MetroWest filed a Motion to Vacate the Default Order (Doc. 46), which was denied on July 27, 2015. (Doc. 50).

The Commission has moved this Court to grant final judgment by default against Defendants Briner and MetroWest, order permanent injunctive relief and impose a civil monetary penalty.

The Court has carefully considered the Complaint, the allegations of which are well-pleaded and taken as true, the Commission's memorandum in support of its motion, the record in this case, and the Court being advised in the premises, it is hereby:

---

[1] Because the Law Society of British Columbia ("LSBC") was appointed custodian of MetroWest by the Supreme Court of British Columbia on October 16, 2013, the CFTC also served the summons, complaint and related pleadings, including the ExParte Statutory Restraining Order and Asset Freeze on the LSBC on April 22, 2015. (Doc. 20). The LSBC notified CFTC staff by letter dated May 19, 2015, that while it acknowledges receipt of the summons, complaint and ExParte Statutory Restraining Order and Asset Freeze issued by this Court, it was not accepting service on behalf of Briner or MetroWest because "[n]either the Law Society nor Mr. Rhodes is a party to the [CFTC's] proceedings and has not acted as 'the agents, servants, successors, employees, assigns or attorneys' of Mr. Briner or MetroWest with respect to those proceedings."

**ORDERED** that the Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief against Defendants Briner and MetroWest is **GRANTED**. Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1(2012), as set forth below.

## I.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Findings of Fact

**The Parties**

1.    Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1-190.10 (2015).

2.    Defendant John D. Briner is a disbarred Canadian attorney who resides in Abbotsford, British Columbia, Canada. He was President and principal of MetroWest Law Corporation. Briner has never been registered with the CFTC in any capacity.

3.    Defendant MetroWest Law Corporation was a Canadian law firm located in Vancouver, British Columbia, solely owned by Defendant Briner. On October 16, 2013, MetroWest was placed into custodianship by the Law Society of British Columbia. It has never been registered with the CFTC in any capacity.

**Defendants' Trading Accounts**

4.    In June 2012, Defendant Briner opened a commodity trading account, ending in nos. 7543 ("MetroWest 7543"), at a registered futures commission merchant ("FCM") in the

name of his law firm, MetroWest. Briner had a unique user name and password that allowed

him to control trading within MetroWest 7543.

5.      In connection with opening the MetroWest 7543 account, Briner signed the

FCM's customer agreement on June 11, 2012, affirming that he would be responsible for all

orders entered using his user name and password. By signing the customer agreement, Briner

also represented that he would not permit any other person to have access to the MetroWest 7543

account for any purpose, unless specified to the FCM and agreed to by the FCM.

6.      A total of $500,000 was wired from MetroWest's client trust account and

deposited into MetroWest 7543 during 2012. Prior to the funding of MetroWest 7543 at the

registered FCM, Defendant Marcus, a client of Briner and MetroWest, caused approximately

$1.2 million to be transferred to MetroWest's client trust account.

7.      On January 25, 2013, Marcus opened a trading account in the name of Tech

Power, ending in nos. 0560 ("Tech Power 0560"), with the same registered FCM. On the

account opening documents, Marcus stated that he was the only authorized trader for the Tech

Power account. Marcus had a unique ID and password that allowed him to control trading

within Tech Power 0560.

8.      In connection with opening the Tech Power 0560 account, Marcus signed the

FCM's customer agreement on January 25, 2013, affirming that he would be responsible for all

orders entered using his user name and password. Marcus also represented that he would not

permit any other person to have access to the Tech Power 0560 account for any purpose, unless

specified to the FCM and agreed to by the FCM. Marcus funded the Tech Power account with

an initial $100,000 deposit on January 30, 2013.

### Defendants' Single Stock Futures Trading Scheme

9.      At some point after opening the MetroWest account, Briner provided Marcus with his unique password and login information, and authorized Marcus to enter trades for the MetroWest 7543 account. By so doing, Briner appointed Marcus as his agent and became liable for the trading that Marcus did on behalf of the MetroWest account. Prior to January 28, 2014, neither MetroWest 7543 nor Tech Power 0560 had ever placed trades on OneChicago.

10.      Beginning on January 28, 2014 and continuing for seven consecutive trading dates through February 5, 2014, Marcus carried out a scheme whereby he moved money from MetroWest to Tech Power through a series of pre-arranged, non-competitive transactions using SSF contracts on OneChicago, commonly known as a "money pass."

11.      In each of those transactions, Marcus placed a limit order to buy a specific quantity of SSF for a specific price for one of the accounts. Following that order, Marcus entered the market with a limit order to sell the exact same quantity of SSF at an identical price for the other account. After the orders were matched in one transaction, Marcus later entered into an equal and offsetting transaction to close out the position. The result was no net change in open positions held by either MetroWest or Tech Power, but a profit to Tech Power and a loss to MetroWest because Tech Power 0560 bought at lower prices from, and sold at higher prices to, MetroWest 7543. This trading pattern was repeated hundreds of times throughout the relevant period.

12.      For example, on January 28, 2014, Marcus entered a limit order to buy one lot of MYGN1D (March expiry) at 12:46:19 pm at a price of $24.97 for Tech Power. At 12:46:29 pm, Marcus entered a limit order to sell one lot of MYGN1D (March expiry) at a price of $24.97 for MetroWest 7543. The orders were matched, and the trade was executed at 12:46:29 pm. The

accounts reversed positions 36 minutes later. At 1:22:31 pm, Marcus entered a limit order to sell

one lot of MYGN1D (March expiry) at a price of $25.42 for Tech Power 0560, and at 1:22:39,

he entered a limit order to buy one lot of MYGN1D (March expiry) at a price of $25.42 for

MetroWest 7543. The orders were matched, and the trade was executed at 1:22:39 pm. In this

transaction, Tech Power 0560 gained $45.00.

13.     Using this methodology, Marcus traded the MetroWest 7543 account and the

Tech Power 0560 account almost exclusively against each other on OneChicago. He was able to

do this, in part, by placing nearly simultaneous, matching orders and trading in eight illiquid SSF

products, which virtually eliminated the possibility of trading with a different counterparty.

During the relevant period, these transactions constituted approximately 98 percent of all trades

in eight SSF products. The MetroWest 7543 account executed a total of 1,248 SSF trades

opposite the Tech Power 0560 account on OneChicago. In the vast majority of instances where

Marcus closed out a position, it resulted in a loss to MetroWest 7543 and a gain to Tech Power

0560. As a result, MetroWest transferred $390,000 to Tech Power.

14.     By knowingly and intentionally executing trades for the Tech Power account

opposite the MetroWest account in contracts with low liquidity, Marcus entered into transactions

without an intent to take a bona fide position in the market.

15.     The foregoing trading activity did not comply with OneChicago's written rules

and generated compliance alerts at OneChicago. On February 7, 2014, OneChicago requested

that the FCM freeze the MetroWest 7543 and Tech Power 0560 trading accounts.

**B.      Conclusions of Law**

**Jurisdiction and Venue**

16.      This Court has jurisdiction over this action pursuant to Section 6c of the Act,

7 U.S.C. § 13a-1 (2012), which authorizes the Commission to seek injunctive relief against any

person whenever it shall appear to the Commission that such person has engaged, is engaging, or

is about to engage in any act or practice constituting a violation of any provision of the Act or

any rule, regulation or order thereunder.

17.      Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C.

§ 13a-1(e) (2012), in that the Defendants transacted business in this District, and the acts and

practices in violation of the Act have occurred, are occurring, or are about to occur within this

District.

**Defendants Violated Section 4c(a)(2)(A)(ii) of the Act**

18.      By the conduct described in Paragraphs 1 through 17 above, Defendants Marcus,

Tech Power and MetroWest repeatedly violated Section 4c(a)(2)(A)(ii) of the Act, 7 U.S.C.

§ 6c(a)(2)(A)(ii) (2012), by entering into transactions that are of the character of, or are

commonly known as fictitious sales, involving the purchase or sale of a commodity for future

delivery which transactions were used or may have been used to hedge any transaction in

interstate commerce in the commodity or the product or byproduct of the commodity; or to

determine the price basis of any such transaction in interstate commerce in the commodity; or to

deliver any such commodity sold, shipped, or received in interstate commerce for the execution

of the transaction.

19.      Briner controlled MetroWest, directly or indirectly, and did not act in good faith

or knowingly induced, directly or indirectly, the acts constituting MetroWest's violations;

8

therefore, pursuant to pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Briner is liable for MetroWest's violation of Section 4c(a)(2)(A)(ii) of the Act, 7 U.S.C. § 6c(a)(2)(A)(ii) (2012).

20.     By providing Marcus with his unique password and login information, and by authorizing Marcus to enter trades for the MetroWest 7543 account, Briner appointed Marcus his agent and MetroWest's agent.

21.     The foregoing acts by Marcus occurred within the scope of his agency with Briner; therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2015), Briner is liable for Marcus' violation of Section 4c(a)(2)(A)(ii) of the Act, 7 U.S.C. § 6c(a)(2)(A)(ii) (2012).

22.     The foregoing acts by Marcus occurred within the scope of his agency with MetroWest; therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2015), MetroWest is liable for Marcus' violation of Section 4c(a)(2)(A)(ii) of the Act, 7 U.S.C. § 6c(a)(2)(A)(ii) (2012).

**Defendants Violated Regulation 1.38(a)**

23.     By the conduct described in Paragraphs 1 through 17 above, Marcus, Tech Power and MetroWest knowingly engaged in a series of non-competitive single stock futures transactions, in violation of Regulation 1.38(a), 17 C.F.R. §1.38(a) (2015), which requires that all purchases and sales of commodity futures contracts be executed "openly and competitively."

24.     Briner controlled MetroWest, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting MetroWest's violations; therefore, pursuant to pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), he is liable for MetroWest's violation of Regulation 1.38(a), 17 C.F.R. §1.38(a) (2015).

25.     By providing Marcus with his unique password and login information, and by authorizing Marcus to enter trades for the MetroWest 7543 account, Briner appointed Marcus his agent and MetroWest's agent.

26.     The foregoing acts by Marcus occurred within the scope of his agency with Briner; therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2015), Briner is liable for Marcus' violation of Regulation 1.38(a), 17 C.F.R. §1.38(a) (2015).

27.     The foregoing acts by Marcus occurred within the scope of his agency with MetroWest; therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2015), MetroWest is liable for Marcus' violation of Regulation 1.38(a), 17 C.F.R. §1.38(a) (2015).

## II.
## ORDER FOR RELIEF

**IT IS HEREBY ORDERED THAT:**

28.     The Commission's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties and Other Statutory and Equitable Relief Against Defendants Briner and MetroWest is GRANTED.

**IT IS HEREBY ORDERED THAT:**

### A.     Permanent Injunction

29.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendants Briner and MetroWest are permanently restrained, enjoined and prohibited from directly or indirectly:

> a.      Entering into a transaction that is a fictitious sale involving the purchase or sale of any commodity for future delivery which transaction was used or may have been used to hedge any transaction in interstate commerce in the

commodity or the product or byproduct of the commodity; or to determine the price basis of any such transaction in interstate commerce in the commodity; or to deliver any such commodity sold, shipped, or received in interstate commerce, for the execution of the transaction, in violation of Section 4c(a)(2)(A)(ii) of the Act, 7 U.S.C. § 6c(a)(2)(A)(ii) (2012); and

b.     Engaging in purchases and sales of any commodity for future delivery or of any commodity option, on or subject to the rules of a contract market, that are not executed openly or competitively, in violation of Regulation 1.38(a), 17 C.F.R. § 1.38(a) (2015).

30.     Defendants Briner and MetroWest are also permanently restrained, enjoined and prohibited from directly or indirectly:

a.     Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012);

b.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2015), for his own personal account or for any account in which he has a direct or indirect interest;

c.     Having any commodity interests traded on his behalf;

d.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests

e.     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f.     Applying for registration or claim exemption from registration with the Commission in any capacity, and engage in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015); and/or

g.     Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2015)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015).

## B.    Civil Monetary Penalty

31.    Defendants Briner and MetroWest shall pay, jointly and severally, a civil monetary penalty in the amount of $280,000 (two hundred eighty thousand) ("CMP Obligation"), plus post judgment interest.  Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2006).

32.    Defendants Briner and MetroWest shall pay their CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made by other than electronic funds transfer, the payments shall be made payable to the Commodity Futures Trading Commission, and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd., Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> Nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendants Briner and MetroWest shall contact Nikki Gibson or her successor at the above address to receive payment instructions and shall fully comply with those instructions.  Defendants Briner and MetroWest shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding.  Defendants Briner and MetroWest shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, 1155 21st Street, N.W., Washington, D.C. 20581.

## C.    Provisions Related to Monetary Sanctions

33.    Partial Satisfaction:  Acceptance by the Commission of partial payment of Defendants Briner's and MetroWest's CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

34.    On May 7, 2015, the Court entered an Order for Preliminary Injunction and Asset Freeze, against Defendants Briner and MetroWest.  The asset freeze prohibited the transfer, removal, dissipation and disposal of Defendants Briner and MetroWest's assets.  The Court hereby lifts the Asset Freeze Order.

## D.    Miscellaneous Provisions

35.    Notice: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested as follows:

Notice to Commission:

> Regional Counsel, Division of Enforcement
> U.S. Commodity Futures Trading Commission
> 525 West Monroe Street, Suite 1100
> Chicago, Illinois 60661

All such notices to the Commission shall reference the name and docket number of this action.

36.    Change of Address/Phone:  Until such time as Defendants Briner and MetroWest satisfy in full their CMP Obligation as set forth in this Order, Defendant Briner shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

37.    Invalidation:  If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

38.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action in order to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants Briner or MetroWest to modify or for relief from the terms of this Order.

39.    Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Order shall be binding upon Defendants Briner and MetroWest, upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief against Defendants Briner and MetroWest.

IT IS SO ORDERED on this __27__ day of __July__ , 2016

_____
Honorable Milton I. Shadur
Senior U.S. District Court Judge

14